No. 90.—JACOB LAMB, plaintiff in error, vs. LEWIS F. HARRIS, defendant.

[1.] The Superior Courts of this State have the power to relieve a citizen against a grant which has been improvidently issued upon a proper case made.

[2.] Where a party seeks to be relieved in Equity, from the effect of a mistake, he must show due diligence on his part.

[3.] A party who has obtained a grant to land, under the Act of the General Assembly, passed in 1845, cannot be affected by the fraudulent conduct of the State-House officers, unless he participated therein.

Decision on demurrer, in Muscogee Superior Court, by Judge ALEXANDER, May Term, 1850.

Lamb *vs.* Harris.

The bill filed by Lewis Lamb charged, that in the land lottery disposing of the lands in Muscogee County, one Charles Whitlock was the drawer of lot No. 176, in the 6th district, who afterwards sold the same to William Crew, and that William Crew sold to complainant, who had remained in possession ever since; that upon the sale to Crew, Whitlock applied at the Executive and other Departments of the Government at Milledgeville, to obtain the grant, and was informed by the officers in charge of the same, that the grant had issued on the 1st day of July, 1829; and that Whitlock, on examination, found that the same was entered, as granted on that day, in the books of the Executive Department; that when complainant purchased, Crew produced a letter from John Bethune, then Surveyor General of the State, stating that the grant had issued on the day stated. As evidence that a grant had issued, the bill stated that the plat had been removed from among the plats of ungranted lots, and placed among those of granted lots, according to the custom of that Department. The bill charged that the entry in the Executive Department was not fraudulent, but was made, either when the grant actually issued, or by mistake; but that it appeared that the grant never had been recorded in the Secretary of State's office, as required by law.

The bill farther charged, that under the Act of 1845, disposing of ungranted lots, Lewis F. Harris had applied for and obtained a grant to this lot, for which he paid $100; that Harris, at the time, knew of these mistakes, and that they had caused the grant not to be issued; that Harris had commenced an action of ejectment to recover the land, and that the same was pending on the appeal. The bill alleged a tender to Harris of the amount paid by him with interest, and offered still to pay it. The bill prayed a perpetual injunction.

On demurrer, the Court dismissed the bill, and this decision is alleged as error.

H. HOLT, for plaintiff in error.

JAS. JOHNSON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We recognise the right of the citizen to be relieved against

a grant which has been improperly issued by the State, in a proper case made ; for, as Sir *Edward Coke* tells us, the Chancellor in England derives his name from his power of *cancelling* (*a cancellando,*) the *King's* letters patent, when granted contrary to law. 4 *Inst.* 88. And this jurisdiction belongs, undoubtedly, to the Superior Courts in this State.

[2.] But we are of the opinion that this bill is defective in two particulars : First, the complainant does not show proper diligence on his part. It is true, that the information obtained in the Executive and Surveyor General's offices was well calculated to lull and mislead him ; but failing to obtain the grant, he should have applied at least to the Secretary of State's office, where the grant, if issued, would have been recorded. Besides, if the grant had been taken out, and the fees paid, there would have been evidence of the fact, both in the Treasurer's and Comptroller General's Departments. From all of these sources, then, especially the Secretary of State's office, information should have been sought. So much for the conduct of the complainant.

[3.] But what has the plaintiff in ejectment done to deprive him of the benefit of his grant from the State? It is true, that it is alleged in the bill, that Harris knew of the mistakes at Milledgeville which had misled Whitlock. But there is no charge of collusion between Harris and the State House officers, or that he was in any way connected with the matter. Indeed, the bill itself expressly repudiates the idea that there was any fraud in the transaction.— Suppose the entry upon the books of the Executive Department had been *fraudulently* put there, still, if Harris had no agency or participation in it, he would be clearly entitled to his grant, under the Act of 1845.

Under these circumstances, we do not feel at liberty to interfere with the grant from the State to Harris, nor to arrest him in the prosecution of his rights acquired under it.

If Whitlock has been injured by the public functionaries of the people, it is meet and proper that the representatives of the people should administer to him adequate redress.

Judgment affirmed.